May it please the Court, my name is Omar Uden. I'm the Attorney of Record for Defendant's many that has come before this Court, this deals with the issue of standing in the context of a mortgage foreclosure. At issue in the instant matter is a foreclosure plaintiff's continued and systematic inability to demonstrate that a proper transfer of a beneficial interest in a loan has occurred and that it in fact has standing to sue when confronted by allegations and evidence to the contrary. Plaintiff here has alleged that it's the legal holder of the affirmative defenses and as such is entitled to foreclose on the promissory note. A promissory note that was originally made payable to an entity titled Fremont Investment and Loan that was executed back in 2002. By way of background under section 3201 of the Illinois Commercial Code acquiring the status of a holder requires proper negotiation. It's our position that plaintiff's failure to effectively show a proper chain of title is comprehensive and rooted in the alleged corporate assignment of mortgage that was attached to the complaint of foreclose and that was relied upon by plaintiff to quell uncertainty regarding its ability to sue. As has been asserted throughout the course of this litigation by the defendant's appellants, notably in the affirmative defenses as well as in their response to the summary judgment motion, it's our position that the assignment attached to the plaintiff's complaint is fatally flawed and insufficient to demonstrate standing. And the reason for this is that the assignment attached to the complaint is the terms of the pooling and servicing agreement governing the terms of the plaintiff's trust which explicitly sets out the terms by which the loan was to be transferred into SANE. This pooling and servicing agreement is demonstrated by the prospective settlement that was offered into evidence by defendant noted that there was a specific cutoff date after which the trust could no longer accept transfers. That cutoff date was May 30th, 2003 where the alleged transfer based on the verbiage on the assignment was, I believe, April 1st of 2009. Additionally, the terms and conditions of the pooling and servicing agreement noted that only the depositor, a securities corporation in this context, was allowed to endorse the note specifically to the trust or in blank. That didn't happen here. Rather, we have an initial assignment of mortgage reportedly from the original lender, Fremont Investment and Loan, directly to plaintiff. Plaintiff, I believe in the motion for summary judgment, three and a half years after filing the complaint initially, introduced into the lower court an alleged allonge that was attached to the note endorsed specifically to the plaintiff by, again, by the original lender, Fremont Investment and Loan. But on its face, it would still contradict the terms of the pooling and servicing agreement as I'm discussing. Based on this, it's our position that even assuming the legitimacy of the alleged assignment of mortgage from Fremont to plaintiff as well as the allonge containing that specific endorsement from Fremont to plaintiff, because of the restrictive terms of the pooling and servicing agreement, laying out the manner in which the loan could be transferred into the trust and plaintiff's failure to adhere to that. It's our position that the complaint exhibits allegations and subsequent pleadings are insufficient to show the standing to sue and that's been demonstrated by defendants. It's such, it's our opinion, it's our position that the circuit court erred in granting the motion for summary judgment and judgment of foreclosure and sale where the defenses had been raised regarding two objections to plaintiff's standing. In its response, plaintiff noted the principle articulated by the second district's Bassman case regarding a defendant homeowner's standing essentially to challenge a pooling and servicing group, challenge an assignment predicated on a pooling and servicing agreement. The plaintiff citing this Bassman approach argues that even if we did produce evidence here demonstrating the assignment violated the relevant PES pooling and servicing agreement and it's their position that we did not, even if we did do this, all it would show was that the transfer was voidable instead of void. And that seems to be what a lot of this is going to articulate is that the only time that a non-party to a trust is able to challenge actions taken by that trust is when those actions render it void. And it's useful at this point, the Bassman case posed three questions to the litigants because dealing with a New York trust as is the case here. The first question was, look, does New York or Illinois law control regarding the mortgages, were validly transferred into the trust? Secondly, they asked, what are the specific laws of New York and Illinois on this issue? Where do they differ? And finally, they asked, for the purposes of standing, is there a difference between what they termed an imperfect conveyance and a failed conveyance? And based on that, whether a transfer should be considered void or voidable? It's our position that these are good questions to examine when dealing with whether this is, in fact, the correct approach. Here is in Bassman, the contract for this transaction included a choice of law provision that specified that, listen, New York law governs the trust. As such, plaintiff argues that Bassman here is directly on point. And I would argue that, yeah, the New York approach would control. And I believe there's a case from this district subsequent to Bassman, is it Bodzianowski, which essentially said, hey, listen, we're not stating a unique approach from Illinois. We're merely clarifying the New York law with regard to this matter. And when examining what the laws are of New York and with regard to this, it's essential to remember that there's a statute which, by its plain language, the New York Estates Powers and Trusts Law, Section 7.24, I think Article Section 2, Subsection 4, I believe, which plainly states, if the trust is expressed in the instrument creating the estate of the trustee, every sale or conveyance or other act of the trustee in contravention of that trust except as authorized by this article and by any other provision of law is void. Ostensibly, just on the surface, just based on the plain language, that would seem to render an action like this, where a transfer was made in contravenance to the plain language terms of the trust, a void. Let's go back to the basics. We have a home purchaser who seeks a mortgage, gets a mortgage, signs a note to, what was that? Fremont Investment and Loan. Okay, and then Fremont basically peddles it to someone, right? Yes. Okay, discount. Okay, that's the business. Yes. Right? And that person or that entity is what? That entity, based on the assignment, is the plaintiff here, the Bank of New York Mellon Trust Company. It's very long. So Fremont actually sold the note to Bank of New York Mellon Trust? Or was it an intervening entity? Well, that's actually kind of an interesting question simply because, not to get too far into the weeds here, but based on the date of the assignment, which was April 1st of 2009, it says that Fremont, the original lender, transferred it directly. The problem is Fremont had been acquired by an entity named Litton Loan Servicing back in June of 2008. Notwithstanding that, it's the plaintiff's position that Fremont is the one directly transferring into the trust. Into the New York Mellon Trust? Correct. And the New York Mellon Trust provisions say we're not accepting anything after such and such? After May 30th of 2003, that's the first thing. And the second element is a transfer can only be made by a specific entity, and it's not Fremont. By a specific entity? Ace Securities Corporation, I believe, based on the allegations. So basically two elements here. One, the timing of the transfer. So you're saying New York Mellon Trust could not have accepted this note because it was after the terms of all notes in the trust had to be on or before May something. May 30th of 2003. This is about six years later. But the record evidence shows that this assignment of this note into the trust occurred six years later. Something like that, yes. Right? That's correct. So it's when looking at New York law, Bassman seems to, out of this district, essentially, this district essentially concluded that Bassman just summarized the New York approach. Didn't come up with, you know, its own idiosyncratic way of doing things. It just basically summarized the New There were some inherent, not inherent, but there were some contradictions in the New York approach. There was a plain language statute that we just discussed, and there was an initial line of cases in like the 19th century, essentially holding that, listen, it's the law in the state that, in New York, that, excuse me, where transfer of a mortgage to a third party is effectuated in a way that sort of contravenes the express terms of a governing trust, that transfer is, I always mess up the pronunciation, ultra-virus. Ultra-virus. Ultra-virus, and thank you, and boy. And so there are a number of cases in New York, albeit from the 19th century, that. Good century, actually. A cleric in the law, then. Sure. But what does tend to happen, as Bassman discusses, is somewhere later on, they wander off the reservation. I mean, they take a different approach, I should say. And they start to hold that, you know, listen, a trustee can bind a trust to an otherwise invalid actor agreement, which might be outside the scope of the trustee's power. And what it seems to depend on is this idea of whether a beneficiary can consent or ratify to that ultra-virus act. So we have an approach, articulated by Bassman, where it's a non-party to a trust is going to be prohibited from being able to challenge the terms of that trust based on a lack of standing, ironically. And the reason that they're not going to be able to do that is, if a potential beneficiary is going to be able to ratify that act that goes outside the terms of the agreement, then it's to be considered voidable instead of void. And the approach is increasingly in New York recently, in contradiction to the 19th century approach, has been more and more of these outcomes are considered voidable. So a defendant's going to lack standing. And so very quickly, I would say that we have two positions on this with regard to a defendant borrower's ability to challenge. One is a little more holistic. It was our position that, listen, Bassman is, it summarizes New York law, but it's our position that it's cited incorrectly. We're not talking about sort of dotting I's and crossing T's. We're talking about very material terms that, you know, affect the transfer into and out of provisions. They sort of go to the heart of what the trust is about. I thought about it, and I've been struggling to kind of come up with a commensurate analogy wherein the dominant approach should give way to completely disregarding both the plain language of the statute, which directs us to follow the mandate of the governing documents, and the language of the governing documents themselves when it comes to, you know, a very material term. And I'm striking out a little bit. I guess the closest I can come up with is, I have a bit of a background in condominium association law. And to me, this seems like a situation where you have a statute, the Illinois Condominium Property Act, that sort of governs the parties and the relationships and the rights and so forth. And you have that property act giving, empowering an association's governing documents, a declaration, bylaws, or rules and regulations, and giving that, those documents wide autonomy to sort of say, hey, here's what, what's what. And this, to me, is a situation where, you know, the plain language of a condo property act giving powers to these internal governing documents would be, you could trample all over that, and someone like a unit owner would have no redress against the association. And in the alternative, Your Honor, I would also say that if we're not going to, you know, sort of subscribe to that more holistic attack from our position on Bassman, I would suggest that there are, even under the Bassman approach, there is a way to view this underlying transaction as void and not voidable. And that is in seeing whether, making a clear showing that the consequences of a beneficiary's ratification would be so severe that no reasonable in an Illinois Bar Journal article by Attorneys Damon and Rittenhouse about four years ago. But if we're looking at these entities as remix, as real estate mortgage investment conduits, the whole point of remix is to be a tax-advantaged class of investments, allowing pools of mortgages to sort of be put together and retain sort of a tax-exempt status to sort of stand alone. But there are sort of arcane tax rules governing these entities. And I made a mistake of trying to get through the internal revenue, certain provisions of the Internal Revenue Code, which was like high school Spanish all over again. But it was sort of like, you know, these rules govern, require that mortgages be transferred to them on the dates they are formed. You know, Internal Revenue Code section 860F, subsection A1, there is hereby imposed for each taxable year of remix a tax equal to 100% of the net income derived from prohibitive transactions. You know, we're talking about investments that fail to comply with the plain language requirements. And there are these tremendous tax penalties that may provide the basis for challenging this, because it would seem to us that no reasonable beneficiary would ratify this agreement where it would open them up to losing their tax-exempt status. So the beneficiary, to make it simple for me, is New York Mellon Trust, right? Correct. Okay. So it's our position that if we're not going to, you know, sort of tear down the Bassman approach or articulate a different overriding... You're saying they don't have standing because there's no way in the world that New York Trust, under the provisions of the trust, could, quote, legitimately, don't take me literally on that, have this as an asset of the trust. I believe that's correct. Because if it's going to turn on the issue of ratifying, then, from our standpoint, given the nature of these remits, there's no conceivable way that, you know, a potential beneficiary would sign off to something where it would open them up to losing their tax advantage status. And that, to us, is an approach, a way of thinking about this that would render this void. So where in the ether is this mortgage in note, as you see it? Because you're saying it can't properly be held by New York Mellon Trust. That's your argument. Because, I mean, let's... You know, you're saying they don't have standing to operate on a foreclosure. I guess, Your Honor, I would just, I would go back to sort of the original execution, the execution of the original mortgage in note and say, was this properly transferred by this entity, Fremont Investment Loan, or Litton Loan Servicing, as Fremont has become... Become a successor to Fremont. Correct. And you're saying that the transfer was to New York Mellon, arguably into their trust by this... What was it called? Litton Loan Servicing. Litton Loan Servicing. But it wasn't, it wasn't, that wasn't... That, that, I would say that. Yeah. But it's also worth noting that Litton Loan Servicing doesn't come up in the transactions. It's always Fremont making the transfer, even though, ostensibly, it would have sort of ceased functions, functioning in the summer of 2008, almost a year before. Okay. So, because of all of this, we would argue that a genuine issue of material fact exists with respect to plaintiff's standing to sue. And we'd ask that the case be dismissed during the alternative, reversed, and remanded. So where do you think it is now? The what is it? The loan? Yeah. I, I would go back to the... Again, Your Honor, I would go back. I would say whatever entity is standing in for Fremont, unless there's some intervening notes that I haven't seen, which is, could, which could be the case, because that does tend to happen. My standing presumption is that it would be with, you know, the, the original, the original lender, the entity that owns the original lender. And who would that be, under your view? I, I suppose it would be, it would be Litton Loan Servicing. The successor, somehow, to Fremont. Correct. But even the merger, could it provide for Fremont to continue to be the Asinor of its own mortgages? I don't know. Possibly. I, I don't know. You don't know? Right. Thank you. Thank you. You'll have time in the floor. Five minutes in the floor. Counsel, you may respond. Who do you think has it? I think the Bank of New York Mellon Trust has it, obviously. And I guess, you know, before we even get into, to Basman, which I, I do think is also controlling, um, there's a preliminary problem here, is that, that this argument that defendants are making, that, that the Bank of New York Mellon Trust lacks standing and doesn't own the note, um, and, and can't foreclose because it's acquired it in violation of this pooling and servicing agreement. But there's no pooling and servicing agreement anywhere in the record. There are various representations by the defendant that, you know, that it clearly violates the agreement, but we don't even have the, you know, like, quotes of the language that he's claiming is violating this agreement. Um, yeah, so where it's his burden on summary judgment to produce some evidence creating a material fact with respect to standing, the failure to produce that, that pooling and servicing agreement in support of this argument, I think is fatal. You can't really say that he's raised a genuine issue of material fact when we have absolutely no idea what that agreement actually provides. So a response to a complaint that says it's a violation of an agreement without the agreement being presented is insufficient. Correct. Particularly when we're at the stage of a summary judgment motion. So it's not, not simply a, you know, dismissed on the pleadings, you know, at that stage. We've, we've come forward with, he now wants to say, my affirmative defense defeats summary judgment. I just have this sort of vague reference in the air that, that there's this agreement that prohibits all this. But even assuming he were able to, you know, produce that agreement that said something that, that would somehow, you know, suggest that this assignment violated the terms of that agreement. This is where Bassman becomes controlling and conclusive, as well as this court's authority in Bozianowski, if I can. Boz, yeah, that one, yeah. The fact case that followed Bassman. We know clearly from both of those cases that a third party to an assignment has no standing to challenge the assignment, unless the assignment is in fact void, not merely voidable. Bassman suggested that under New York law, which is what the defendant claims applies, again, we don't really know since we don't have the agreement, but they claim New York law controls. Bassman suggests that New York law holds that this sort of violation of a PSA would render it voidable, not void. I know Justice Holdridge, in your special concurrence, you suggested, well, Bassman doesn't quite go that far. It simply says that there's not enough here. I think even under that interpretation, which I definitely see both sides of that, the same problem is presented here. Counsel has made a number of arguments, now an oral argument, that, well, maybe this statute that's cited in Bassman was not interpreted the best, or some of this older 19th century case law might compel a different result, or maybe there's this alternative theory from a bar review journal suggesting that if the consequences of ratification were so severe, that then we can just decide it's void anyway. None of those arguments were made in the trial court. None of them were actually made in any of the appellate briefs. Those arguments are forfeited. But regardless, even if you were to consider those arguments, he has not presented any New York law holding that a violation of the PSA in a case like this would actually render the transfer void rather than voidful. And we cited a number of cases in our brief from the Second Circuit, Vermont, and the First Circuit, all saying that most cases that have considered this issue have found that under New York law, a violation of the PSA would render it voidable, not void. Just ask for my own curiosity. Sure. Voidable means that there's somebody out there who can actually bring an action, say this is in violation of the trust provisions, the pooling service agreement of New York Mellon Trust. Sure. Who would be, or what would be those entities? Yeah, I... I'm just curious. I suppose the parties to the assignment, it's also the...  Fremont, and or Litton, as the asinore. I guess the beneficiary of the trust. Potentially, if they were somehow felt that they were harmed by this imprev... In there and being serviced. Right, and I will correct counsel. I don't think of New York Mellon Trust as the beneficiary of the trust. It's the trustee. And then if you go through the captions, they're the trustee on behalf of ACE, which is the trustee on behalf of another entity. But yeah, it's not... We're not the beneficiary, we're the trustee. Somebody in Siberia was getting checks, right? Apparently. Yeah, so... Russians aren't optimists. Good thought, yeah. So, under Bassman and under this court's precedent, that case, Boese and Ioski, any violation, even if they could establish it, voidable, not void, they don't have any standing to raise it. The alternative argument, which counsel did not address on oral argument, but, you know, addressing the briefs out... I'll touch on just briefly, this argument that the Bank of New York Mellon Trust lacked standing because the endorsed note was not attached to the complaint. It was produced subsequently as an exhibit in support of summary judgment. This court's decision in Cornejo controls on that. This court was very clear that failure to attach the endorsed note to the complaint is not sufficient to prove a lack of standing. To prove a lack of standing, the defendants would have to produce some sort of evidence to show that the assignment of the mortgage and note took place after the complaint was filed. Defendants have actually conceded numerous times on appeal that the endorsed note was, you know, it was executed, transferred, the assignment was complete prior to filing of the complaint. I'll just highlight page 17 of the opening brief. They say that they concede that Bank of New York Mellon Trust is seemingly in possession of a properly negotiated instrument at the time of filing the complaint. Page 21 of that brief, they say that the endorsed note was presumably executed concurrently or before execution of the assignment back in 2009. And the reply brief, again, they say the endorsement was presumably executed shortly before commencement of suit. In each case, they've conceded  endorsed note, transferred, everything prior to filing the complaint. That actually establishes that we do have standing, not that we don't. If this court has no questions, I simply ask that you affirm. I don't believe we do. Thank you very much. Counsel, you may reply. Just a couple of quick things, Judge. And I would absolutely concede the initial point by counsel that the only thing that is provided in the record was the prospective supplement as opposed to the sort of guts of the whole thing, the actual PSA. I mean, everything is imputed to me as the attorney. This is just what we have to deal with. But that is valid. I have to concede that. That said, one of the other points as to the New York case law, I think, and I don't want to mischaracterize what counsel was saying, so please correct me if I'm wrong. There was the characterization that the New York case law is sort of dispositive on this point about the characterization of these types of agreements as voidable as opposed to void. I would contend that it's a little more of an open, based on the New York case law, it's a little bit more of an open question. And I believe even the Bassman court, I don't have the verbatim language, but it said something to the effect of, there are some contradictions here and it's not for us to sort of figure that out. You know, you have a plain language statute which says very specific things. We have an initial line of cases, the 19th century ones, that would seem to affirm that. And some later cases that don't. It seems that the Bassman court is acknowledging that things are fraught with a little bit of tension in terms of establishing a coherent understanding. So I don't know that it's altogether that clear. But I would just pin it back to the point that the linchpin here from our perspective is this issue of the legitimacy of the assignment, particularly with regard to, you know, very bright line rules. And even just going off of the perspective supplement, I mean, it does tend to, it does specifically say, hey, this is the date at which the trust is cut off and accepting any kind of transfer. This isn't a minor ancillary scrivener's error type of situation. This would seem to be something that is, that would be very material to assessing the legitimacy of the transfer. And we would simply argue that that would, if we're not going to adopt that approach, then it's a useful, it is a useful conception to approach it from the standpoint of, this question from the standpoint of, if it's based on whether a prospective beneficiary would ratify this, is there a reasonable scenario that could be contemplated where that wouldn't happen? And I believe in, if we're talking about arcane tax statutes that basically provide tax penalties in the stripping of tax-exempt status of an entity, that would seem to open up an avenue where I can't foresee any reasonable beneficiary who had even a modicum of understanding of what a remake does and what its benefits are to sign on. And in our view, that would render such a transfer not valid and void even under the Bassman approach. And unless there are any questions from the court. I don't believe there are. My thanks to the court and my thanks to counsel. Well, thank you, counsel, both for your arguments in this matter this morning. We've taken an advisement which this position shall issue. The court will stand in brief recess. Recess.